STEPHEN T. KAM (Cal. Bar No. 327576)
Email: kams@sec.gov
SARAH S. NILSON (Cal. Bar No. 254574)
Email: nilsons@sec.gov
WENDY E. PEARSON (Cal. Bar No. 211099)
Email: pearsonw@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine Zoladz, Regional Director
Brent Wilner, Associate Regional Director
Douglas M. Miller, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>RYAN CHOI,<br><br>　　　　Defendant, | Case No. 2:24-cv-09082<br><br>**COMPLAINT** |

　　　Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

　　　1.　The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act").

　　　2.　Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and

COMPLAINT　　　　　　　　　　　　　　1

courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Defendant resided in this district during the relevant period.

## SUMMARY

4. This civil enforcement action concerns Defendant Ryan Choi ("Choi") negligently engaging in conduct that operated as a fraud on the readers of Citron Research, a well-known short publisher recognized for its tabloid style exposés that purports to disclose fraudulent or other problematic behavior at target companies.

5. From October 2018 through December 2020, Choi assisted Andrew Left ("Left") in preparing some tweets and reports that Left published through Citron Research, an online platform that identified companies as good short selling or long investment opportunities and often included target prices. In response to these Citron Research reports and tweets, the price of these target stocks often moved in a manner consistent with the recommendations.

6. In December 2020, Choi worked with Left on the research and content for two buy recommendations that Left issued through Citron Research. Choi failed to act reasonably by not conducting adequate research or due diligence, which he provided to Left to support the recommendations that Left included in the Citron Research tweets. Choi also quickly traded on price increases that came after the two Citron Research tweets, and negligently failed to ensure that this trading activity was adequately disclosed in the tweets. In total, Choi made $1,647,217 in profits in connection with his trading around these two tweets.

7. Through his negligent conduct, and as further detailed in this complaint, Defendant Choi violated the antifraud provisions of Section 17(a)(3) of the Securities Act.

8. As a result of this negligent conduct, the SEC is seeking a permanent injunction against Defendant. The SEC further seeks to disgorge Defendant's trading profits, along with prejudgment interest thereon, and to impose civil money penalties against Defendant pursuant to Section 20(d) of the Securities Act.

## THE DEFENDANT

9. **Ryan Choi**, age 35, is a resident of Beverly Hills, California. Choi held Series 63, 65 and 79 licenses and was registered with the State of California as an investment adviser representative from 2017 to 2018. Choi, along with Andrew Left, started Citron Capital in October 2018. Choi assisted Left with research for some of the reports and tweets that Citron Research issued. Prior to joining Citron Capital, Choi acted as an investment adviser through his own firm, Choi Capital, LLC, and before that worked for various hedge funds and investment banks.

## RELATED PERSONS AND ENTITIES

10. **Andrew Left** ("Left") is an activist short publisher. Starting around 2008, Left published tweets and reports which recommended investment ideas to the market through his online platform, Citron Research. These publications frequently purported to expose negative information on target companies, and frequently encouraged his readers to sell their stock in the target companies. At times, these publications also presented positive information on target companies and encouraged Left's readers to buy. Left and Citron Research had a substantial following – on twitter alone, Citron Research had more than a hundred thousand followers. Left has been separately charged in a federal district court action captioned *SEC v. Left, et al.*, 2:24-cv-06311 (C.D. Cal. July 26, 2024).

11. **Citron Research** ("Citron Research") (formerly "StockLemon.com") is Left's online moniker through which he releases tweets and reports purporting to expose frauds or other problematic conduct at target companies. Left has been releasing online stock commentary since at least 2001 and has used the Citron

Research moniker since approximately 2008.

12. **Citron Capital, LLC** ("Citron Capital") is an investment adviser established by Left and Choi in October 2018. Citron Capital registered with the SEC as an investment adviser between February 2019 and April 2019, and thereafter was an exempt reporting adviser registered with the California Department of Business Oversight until March 2022. Citron Capital managed an investment fund, Citron Capital LP. Citron Capital has been separately charged in a federal district court action captioned *SEC v. Left, et al.*, 2:24-cv-06311 (C.D. Cal. July 26, 2024).

## THE ALLEGATIONS

### I.   Choi's Role at Citron Research and Citron Capital

13. Beginning in 2008, Left used Citron Research as a platform to release reports and tweets containing trading recommendations, which often included information about target companies, statements that Left was long or short the stock, the projected direction the target companies' stock price was moving, and encouraged readers to take a short or long position in the companies.

14. Citron Research was an activist "short" publisher, largely releasing negative or disparaging information on target companies. The Citron Research short publications often strongly encouraged readers to sell the stock of the target company.

15. At times, Citron Research recommended "long" investment ideas by presenting positive, favorable descriptions of a target company and its stock's value.

16. Citron Research's publications were disseminated by Left through written reports posted on the Citron Research website, CitronResearch.com. The reports were also published to subscribers through an email blast, and typically linked to a tweet from Citron Research's twitter feed, @CitronResearch.

17. Citron Research also at times posted tweets stating or leading readers to believe that Left had "long" or "short" exposure in a target company without

posting an accompanying report.

18.   In or around late 2018, Choi began working for Left, generating investment ideas, conducting research, and assisting Left with the drafting of Citron Research publications which present investment views and information on target companies.  Choi often contributed to and/or reviewed the Citron Research publications prior to their release.

19.   In late 2018, Choi and Left created Citron Capital.

20.   Left controlled and had authority over all operations of Citron Capital.  Choi handled day-to-day business tasks of Citron Capital, including the formation of the entity and its policies and procedures.

21.   While Left directed the trading and investment decisions of Citron Capital and owned all of Citron Capital's funds, Choi entered the trades in the Citron Capital account at Left's direction.

## II.   Choi Was Aware That Citron Research Tweets and Reports Moved the Market

22.   From 2018 to 2020, Citron Research had more than one hundred thousand followers on twitter.  Citron Research's tweets were also frequently picked up by the media and quickly disseminated to a much wider audience.

23.   Because of its wide dissemination, investors often sold their stock in response to Citron Research's short recommendations.  This typically led to a decline in the stock price.  On the other hand, investors often bought stock in response to Citron Research's long recommendations, which typically led to an increase in the stock price.

24.   Choi knew that Left took steps to perpetuate his reputation as a top short seller that successfully predicted price moves, ensuring that investors would follow its recommendations.  For example, Choi was also aware of media statements that Left "*could send a stock tumbling with a single tweet*," and that these media statements often highlighted drastic price moves following the Citron Research

publications.

25. Left drafted and had ultimate authority over the content of the Citron Research tweets. Unlike Left, Choi did not have the same reputation or broad following among investors for being a well-known short seller, did not make statements directly to the media that were designed to ensure that investors would follow Citron Research recommendations, and did not create anonymous websites or post negative information about target companies to amplify the Citron Research recommendations.

### III. Choi's Trading Around Citron Research's Tweets on VUZI and XL that Operated as a Fraud on Investors

26. During the Relevant Period, Choi failed to act reasonably by not conducting adequate research or due diligence on VUZI and XL, which Left used to issue recommendations on those stocks. Choi also traded around these Citron Research tweets, which were used as catalysts to derive short-term profits.

27. Choi's trading around these tweets yielded approximately $1,647,217.

#### 1. VUZI

28. On December 18, 2020, Choi purchased VUZI call options between 1:03 and 1:46 pm, meaning that he stood to profit if the price of VUZI increased.

29. That same day at 2:04 pm, Citron Research published a tweet stating *"Getting emails about shorting $VUZI. NO WAY we would short this flyer. Small market cap with story that is tied to 5G, $AMZN and $PLUG and Covid. There has to be easier pickings...still doing research. Risk/Reward easier on other high flyers."*

30. Choi did not conduct adequate due diligence or research on VUZI, and Left knew that he had not done so when Left issued the VUZI tweet.

31. Given his role at Citron Capital, Choi knew or should have known the content of this tweet before it was published. Choi also generally knew when Left intended to publish the tweet.

32. Following the rise in the price of VUZI stock immediately after the Citron Research tweet, Choi began to sell his VUZI call options the same minute as the tweet's publication, profiting from the price increase. Choi had completely exited his VUZI position within seven minutes of the tweet.

33. After that, Choi conducted research, including by speaking with VUZI company representatives and industry experts to determine if the company was a good long investment. Choi concluded and communicated to Left that *"we can't have enough conviction in this being an actual long."*

34. Left did not remove the tweet from Citron Research's twitter feed.

35. Choi generated profits of $567,640 trading around the VUZI tweet over a period of approximately one hour and 8 minutes.

36. The VUZI tweet did not disclose that Choi intended to quickly trade around the tweet. Choi's intention to sell VUZI and capitalize on the price movements created by the issuance of the Citron Research tweet was not disclosed to the market, and a reasonable investor would have found this important in deciding whether to follow Citron Research's investment recommendation.

   **2.   XL**

37. On December 23, 2020, Choi purchased XL call options between 11:18 am and 1:31 pm, meaning that he stood to profit if the price of XL increased.

38. At 1:41 pm, Left issued a tweet from the Citron Research platform stating that *"Citron long $XL tgt $60. TAM of $XL over $1T. Electrification as a Service (EaaS) will be massive . . . more than twice $QS and $LAZR combined. Blue chip customer base with FedEx, Coke, Pepsi, DHL and many more. SPACS always cautious-this story has great Risk/Reward."*

39. Choi was responsible for conducting the research for the XL tweet. Choi did not conduct adequate research or due diligence for the XL tweet. Left, who issued the XL tweet, knew that Choi's research on XL was not adequate.

40. Given his role at Citron Capital, Choi knew or should have known the

content of this tweet before it was published. Choi also generally knew when Left intended to publish the tweet.

41. The XL tweet included a target price of $60. Prior to the tweet, XL stock was trading at $24.93. Despite Citron Research's tweet notifying readers that Citron Capital was long and thought the stock price would go to $60, Choi began selling his call options at 1:41 pm, the same minute that the XL tweet was released. He sold his entire XL position within six minutes.

42. Several months later, in May 2021, a retail investor admonished Left on his recommendation on XL stating: "*Me and lots of my friends bought xl stock when you uploaded your bullish these on it. Since then the company almost dissapeared (sic) and goes to zero. Please post your opinion right now and respect your followers worldwide.*"

43. In response, Left admitted the recommendation on XL "*sucked*" and claimed that "*I fired the analyst that made that call*," referring to Choi. In fact, Left did not fire Choi and continued to work closely with him through at least 2022.

44. Choi generated profits of $1,079,577 trading around the XL tweet over a period of approximately two and a half hours.

45. The XL tweet did not disclose that Choi intended to quickly trade around the tweet. Choi's intention to sell XL and capitalize on the price movements created by the issuance of the Citron Research tweet was not disclosed to the market, and a reasonable investor would have found this important in deciding whether to follow Citron Research's investment recommendation.

## FIRST CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violation of Securities Act Section 17(a)(3)

46. The SEC realleges and incorporates by reference paragraphs 1 through 45 above.

47. By engaging in the conduct described above, Defendant Choi, directly or

1  indirectly, in the offer or sale of securities, and by the use of means or instruments
2  of transportation or communication in interstate commerce or by use of the mails
3  directly or indirectly:  employed devices, schemes, or artifices to defraud; and
4  engaged in transactions, practices, or courses of business which operated or would
5  operate as a fraud or deceit upon the purchaser.

6      48.  By engaging in the conduct described above, Defendant Choi violated,
7  and unless restrained and enjoined will continue to violate, Section 17(a)(3) of the
8  Securities Act, 15 U.S.C. § 77q(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendant committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant Choi, and his officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a)(3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(3)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person about the price or trading market for any security, or (ii) making any false or misleading statement, or disseminating any false or misleading documents, materials, or information, concerning matters relating to a decision by an investor or prospective investor to buy or sell securities of

any company.

### III.

Order Defendant Choi to disgorge all funds received from his illegal conduct, together with prejudgment interest thereon, pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

### IV.

Order Defendant Choi to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: October 22, 2024

*/s/ Stephen T. Kam*
STEPHEN T. KAM
Attorney for Plaintiff
Securities and Exchange Commission